**FILED**

Nov 14 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ s/ CharityW _____ DEPUTY

Collette Stark
2175 Cowley Way
San Diego, CA 92110
(619) 347-0726
videosolutions@me.com

Plaintiff in Pro Per

# THE UNITED STATES FEDERAL DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Collette Stark, an individual,<br>        Plaintiff,<br><br>        vs.<br><br>Alterna Marketing Consultants, LLC, a<br>Delaware limited liability company, dba<br>Lendrzhub;<br>Juan M. Pasalagua; an individual and as<br>an officer of Alterna Marketing<br>Consultants, LLC;<br><br>        Defendants. | Civil Case No. '18CV2599 JLS AGS<br><br>**COMPLAINT**<br><br>**1. TCPA 47 USC §227(b)(1)(A)**<br>**2. TCPA 47 USC §227(c)(5)**<br>**3. CIPA PC §637.2 and §637.2**<br><br><br>**JURY TRIAL DEMANDED** |

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA AND CIPA - 1

18CV

May it please the Court, Plaintiff Collette Stark (herein "Plaintiff" or "Stark"), for this complaint against Defendants Alterna Marketing Consultants, LLC and its present, former and future direct and indirect parent companies, subsidiaries, affiliates and agents ("ALTERNA MARKETING"); and Juan M. Pasalagua, ("Pasalagua") an individual and as officer of Alterna Marketing Consultants, LLC, alleges as follows:

## I.    INTRODUCTION

1.    The TCPA causes of action (47 USC §227(b) and (c)) filed herein for, *inter alia*, illegal telemarketing to Plaintiff's DNC registered cellular phone through the use of an ATDS is expressly alleged against Defendants Alterna Marketing Consultants, LLC and its present, former and future direct and indirect parent companies, subsidiaries, affiliates and agents; and Juan M. Pasalagua, an individual and as officer of Alterna Marketing Consultants, LLC.

2.    The CIPA cause of action (PC §§§632, 637.2, 632.7) filed herein for illegal recording of the telemarketing call to Plaintiff's phone without disclosure of the recording is alleged against Defendants Alterna Marketing Consultants, LLC and its present, former and future direct and indirect parent companies, subsidiaries, affiliates and agents; and Juan M. Pasalagua, an individual and as officer of Alterna Marketing Consultants, LLC.

3.    <u>Nature of Action</u>.  Something is rotten in San Diego, to wit: Alterna

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA AND CIPA - 2

18CV

Marketing Consultants, LLC, and Pasalagua have been bombarding Ms. Stark, without her consent, with autodialed and prerecorded calls ("robocalls") as well as "live-transfer" calls using an ATDS as defined by the 9th Circuit in the *Crunch[1]* case. Ms. Stark begged Alterna Marketing Consultants, LLC, and Pasalagua to stop these illegal calls, but since then, Defendants Alterna Marketing Consultants, LLC, and Pasalagua and its hired and controlled agents have robocalled Plaintiff seven more times. It does not appear that these defendants are going to stop calling nor obey the DNC registry and thus this lawsuit is necessary. Ms. Stark brings this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), in hopes that an injunction and damages will encourage Alterna Marketing Consultants, LLC, and Pasalagua to change their ways. The Court needs to make illegal telemarketing more expensive than actually complying with the law.

## II. PARTIES

4.    Plaintiff Collette Stark is a citizen of California who resides in and conducts business in California, in this District.

5.    Defendant ALTERNA MARKETING CONSULTANTS, LLC is a Delaware LLC (6317761) organized under the laws of Delaware on 2/15/2017 with its principal place of business located at 300 Delaware Ave, Suite 210-A,

---

[1] *Jordan Marks vs. Crunch San Diego, LLC*, 14-56834 (filed September 20, 2018) by Judge Ikuta

18CV

Wilmington, DE 19801.  ALTERNA MARKETING CONSULTANTS, LLC does business in this District and throughout the United States.

6.      ALTERNA MARKETING CONSULTANTS, LLC is vicariously liable for the acts of its telemarketing lead brokers because ALTERNA MARKETING told, instructed and ordered them to telephone solicit Stark at 619-347-0726 multiple times.  ALTERNA MARKETING hired others, including Markus Thomkins, to illegally call Plaintiff multiple times and then, eventually provided the information on Plaintiff to its agents who again violated the TCPA and illegally telemarketed Plaintiff with an ATDS.

7.      ALTERNA MARKETING has knowingly and intentionally hired, directed and ordered it agents to obtain merchant cash advance and loan leads and appointments through telemarketing activities in violation of the federal TCPA, and CIPA laws of California.

8.      Upon information and belief, Pasalagua is the sole owner, officer, member and manager of Alterna Marketing Consultants, LLC and has cause said entity to violate 47 USC §501.  Therefore, Pasalagua is personally liable for the acts and actions of said entity.

9.      Defendant Pasalagua cannot create, operate and run a limited liability company to commit, engage in and conspire to violate criminal laws, including federal and state misdemeanors.

18CV

### III. JURISDICTION AND VENUE

10.    Jurisdiction. This Court has federal-question subject matter jurisdiction over the Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over the Plaintiffs' claim arising under California's Unfair Competition Law ("UCL"), Civil Code §1770(a)(22)(A)[2], and California Invasion of Privacy Act, Penal Code §637.2, §632.7 because those claims:

      a.  arises from the same nucleus of operative fact, i.e., Defendant's telemarketing robocalls to Plaintiff;

      b.  adds little complexity to the case; and

      c.  relies on the same nucleus of facts, so it's unlikely to predominate over the TCPA claims.

11.    Personal Jurisdiction. This Court has personal jurisdiction over Alterna Marketing Consultants, LLC, and Pasalagua because a substantial part of the wrongful acts alleged in this Complaint were committed in California. For example, Alterna Marketing and Pasalagua made illegal telemarketing robocalls to

---

[2] Plaintiff is not expressly propounding a cause of action for Civ. §1770(a)(22)(A) or B&P §17200 at this time, but rather is merely putting Defendants on notice that leave to amend will be sought after discovery.  A motion to dismiss these as causes of action would be frivolous and sanctionable under Rule 11.

18CV

Ms. Stark, while she was in California.   A person by the name of Markus

Thomkins works for Alterna Marketing and has repeatedly called Plaintiff

claiming to be with "Lendrzhub" and has sent Plaintiff an email from

Lendrzhub@gmail.com and copied Alex Procopio <alex@lendrzhub.com>, Juan

Pasalagua <Juan@lendrzhub.com>, eqacebiz@gmail.com on November 8, 2018 at

7:43 AM.   The email stated the office was in "San Diego" but gave no street

address.   The web page terms and conditions at www.lendrzhub.com states that

California law is the governing law for venue and jurisdiction and "without regard

to conflicts of laws."

12.     "Where, as here, there is no applicable federal statute governing personal

jurisdiction, the district court applies the law of the state in which the district court

sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d

1199, 1205 (9th Cir. 2006); *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316,

1320 (9th Cir. 1998). "Because California's long-arm jurisdictional statute is

coextensive with federal due process requirements, the jurisdiction analyses under

state law and federal due process are the same." *Yahoo!*, 433 F.3d at 1205 (citing

Panavision, 141 F.3d at 1320). Due process requires that Alterna Marketing and

Pasalagua must have minimum contacts with the forum such that the assertion of

jurisdiction in that forum "'does not offend traditional notions of fair play and

substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir.

2005) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

13.     There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754-55, 187 L. Ed. 2d 624 (2014). "For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in 'continuous and systematic general business contacts,' that 'approximate physical presence' in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)) (internal citations omitted).  To establish specific jurisdiction, Plaintiff must show: "(1) [t]he non-resident defendant . . . purposefully direct[ed] [its] activities or consummate[d] some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avail[ed] [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* at 802.  At least two courts in the 9th have found specific jurisdiction in circumstances similar to this case. One court found personal jurisdiction where the out-of-state defendant sent numerous unsolicited fax

advertisements to a California-based plaintiff. *Global Commc'ns, Inc. v. Blue Jay, Inc.*, No. C 08-4254 PJH, 2009 U.S. Dist. LEXIS 1616, 2009 WL 29905, at *2, 8-10 (N.D. Cal. Jan. 5, 2009).

14.     Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims occurred in this District and because Alterna Marketing Consultants, LLC, and Pasalagua are required to be registered with the California Secretary of State and do substantial business in this District.  Alterna Marketing and Pasalagua have purposefully directed its activities to California and advertises that it does business in California.

## IV. TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

15.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

16.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice… to any telephone number assigned to a … cellular telephone service." 47 U.S.C. §227(b)(1)(A)(iii).

17.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No.

02-278, Report and Order, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

18.    "Month after month, unwanted [communications], both telemarketing and informational, top the list of consumer complaints received by the [Federal Communications] Commission." *In re Rules and Regulations Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 7991 ¶ 1 (2015).

19.    "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016), available at https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commissionrules-regulations/160616robocallscomment.pdf.

20.    In 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftcreleases-fy-2017-national-do-not-call-registry-data-book-dnc.

21.    The dialing system used by Alterna Marketing and Pasalagua is the Five9 predictive dialer, a dialing system that is subject to the TCPA's ATDS protections.

22.     The Five9 predictive dialer works by loading a list of telephone numbers electronically into the dialer, and with the push of a single button, calls are made automatically and sequentially from that list.

23.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

24.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

25.     The TCPA makes it unlawful to make telemarketing solicitations to telephone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

26.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c). 47 U.S.C. § 227(c)(5).

27.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18CV

28.    The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

29.    The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted).

30.    FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

31.    The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency

for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

32.     The 9th Circuit has defined an ATDS as follows: "we conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a "random or sequential number generator," but also includes devices with the capacity to dial stored numbers automatically. Accordingly, we read § 227(a)(1) to provide that the term automatic telephone dialing system means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers."

33.     Senator Fritz Hollings complained, "[c]omputerized calls are the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. S16,205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings). Recipients deemed that "automated telephone calls that deliver an artificial or prerecorded voice message are more of a nuisance and a greater invasion of privacy than calls placed by 'live' persons." S. Rep. No. 102-178, at 4.

34.     The plausibility standard 'calls for enough fact to raise a reasonable

expectation that discovery will reveal evidence' of the defendant's liability."

*Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting

*Twombly*, 550 U.S. at 556).  The Federal Communications Commission ("FCC")—

which has authority to implement the TCPA's provisions, *see* 47 U.S.C. §

227(b)(2)— has stated that a plaintiff, to establish a TCPA violation, "need only

show that [the Defendant] called a number assigned to a cellular telephone service

using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo

Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012).  Because the Defendant

has violated multiple subsections of 47 U.S.C. §227, including but not limited to

47 U.S.C. §227(b)(1)(A) and §227(c), then Defendant has committed the criminal

violation of 47 U.S.C. §501.

35.     "[P]rior express consent is an affirmative defense, not an element of the

claim," meaning a plaintiff "need not plead that he did not give his prior express

consent." *Manfred v. Bennett Law, PLLC*, No. 12–CV–61548, 2012 WL 6102071,

at *2 (S.D. Fla. Dec. 7, 2012).  Rather, "[t]he only thing [a] [p]laintiff must plead

to establish a violation of the TCPA is that the [d]efendants left voicemail

messages at a number assigned to a cellular telephone service using an automatic

dialing system or an artificial or pre-recorded voice." Id. (denying motion to

dismiss for failure to state a claim where the plaintiff alleged "that [the]

[d]efendants used an Automatic Telephone Dialing System or an artificial or pre-recorded voice to place the telephone calls to [the] [p]laintiff's cellular phone.").

36.     Plaintiff Stark alleges that Defendants Alterna Marketing and Pasalagua placed repeated automated telephone calls to Plaintiff Stark's cell phone (619-347-0726) from Defendant Alterna Marketing and Pasalagua phones and that the calls exhibited signs of being made with an Automated Telephone Dialing System, including repeated telemarketing calls to Plaintiff Stark within a period of time and the presence of a pause or click (which is proven by the recording), which is commonly associated with an Automated Telephone Dialing System (ATDS). Those allegations are true and are sufficient to establish the elements of a TCPA claim.  Defendants Alterna Marketing Consultants, LLC, Pasalagua telemarketing agents also admitted on the call that they used an ATDS to initiate the dialing of the call to Plaintiff Stark.

37.     Fictitious defendant ABC, Inc (a Doe Defendant to be named after discovery reveals the same) that was hired by Alterna Marketing Consultants, LLC, Pasalagua to knowingly and intentionally make robo-dialed calls to Plaintiff Stark with a pre-recorded voice message that was used for telemarketing purposes between approximately September 1, 2018 and November 12, 2018.  ABC, Inc has subsequently made illegal telemarketing calls to Stark and discovery may very well lead to adding ABC, Inc as a defendant herein.

18CV

38.     California Civil Code section 1770(a)(22)(A) prohibits prerecorded telemarketing messages.

39.     As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act...is well known for its provisions limiting junk-fax transmissions.  A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered--and routing a call to voicemail counts as answering the call.  An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.
> *Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 638 (7th Cir. 2012)*

40.     As the Court unanimously held in *Haines v. Kerner*, 404 U.S. 519 (1972), a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id., at 520-521, quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)." *Estelle v. Gamble* (1976) 429 U.S. 97, 106 [97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261].

## V. STANDING

41.     The court must evaluate lack of statutory standing under the Rule 12(b)(6) standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  However, because Plaintiff is proceeding pro se, her complaint "must be held to less stringent

18CV

standards than formal pleadings drafted by lawyers" and must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming pro se complaints post-*Twombly*). The Ninth Circuit has concluded that the court's treatment of pro se filings after *Twombly* and *Iqbal* remain the same and pro se pleadings must continue to be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42 (7th Cir. 2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting that even following *Twombly* and *Iqbal*, "we remain obligated to construe a pro se complaint liberally").

42.     Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

A. A valid injury in fact;

B. which is traceable to the conduct of Defendants Alterna Marketing and Pasalagua;

C. and is likely to be redressed by a favorable judicial decision.  See, *Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 560.  In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiff must clearly allege facts demonstrating all three prongs above.

**The "Injury in Fact" Prong.**

43.     Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo (*Id.). For an injury to be "concrete," it must be a de facto injury, meaning that it actually exists.  In the present case, Plaintiff was called on her cellular phone at least nine (9) times by Defendants Alterna Marketing Consultants, LLC, Pasalagua.  In fact, Plaintiff expressly informed Defendants Alterna Marketing Consultants, LLC, and Pasalagua to cease and desist from all future telemarketing on the very first calls they made.  Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff in multiple ways. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). Defendant's invasion of Plaintiff's right to privacy is further exacerbated by the fact that Plaintiff's phone number, at all times relevant to this litigation, was on the National Do-Not-Call Registry (hereinafter, "DNC Registry"). As well, Plaintiff had no prior business relationship with Defendants Alterna Marketing Consultants, LLC, and Pasalagua prior to receiving the seriously harassing and annoying calls.   All of Plaintiff's injuries are concrete and de facto. For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins,* 135 S.Ct. 1540, *578 U.S. ___ (2016)* at 14.        In the instant case, it was Plaintiff's phone that was called and it was Plaintiff who answered the calls. It was Plaintiff's

personal privacy and peace that was invaded by Defendants Alterna Marketing

Consultants, LLC, and Pasalagua persistent phone calls using an ATDS and a pre-

recoded message, despite Plaintiff having no prior business relationship with

Defendant Alterna Marketing and Pasalagua and Plaintiff's attempt to avoid the

damage by registering her number on the DNC Registry.

**The "Traceable to the Conduct of Defendant" Prong**

44.     The second prong required to establish standing at the pleadings phase is

that Plaintiff must allege facts to show that her injury is traceable to the conduct of

Defendant Alterna Marketing Consultants, LLC, and Pasalagua.  In the instant

case, this prong is met by the fact that the calls to Plaintiff's cellular phone were

placed either by Defendant Alterna Marketing Consultants, LLC, and Pasalagua

directly, or by Defendant' agent at the express direction and control of Defendant

Alterna Marketing Consultants, LLC.   See *Jones v. Royal Admin. Servs., 866 F.3d*

*1100 (9th Cir. 2017)* ten factor test[3] from the 9th Circuit and Civil code §2307.

**The "Injury is Likely to be Redressed by a Favorable Judicial Opinion"**

**Prong**

---

[3] 1) the control exerted by the employer, 2) whether the one employed is engaged in a distinct occupation, 3) whether the work is normally done under the supervision of an employer, 4) the skill required, 5) whether the employer supplies tools and instrumentalities [and the place of work], 6) the length of time employed, 7) whether payment is by time or by the job, 8) whether the work is in the regular business of the employer, 9) the subjective intent of the parties, and 10) whether the employer is or is not in business.

45.     The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a request for damages for each call made by Defendant Alterna Marketing Consultants, LLC, and Pasalagua, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.  Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendant Alterna Marketing and Pasalagua from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past and prevent further injury in the future. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiff has standing to sue Defendant Alterna Marketing and Pasalagua on the stated claims.

46.     "…[C]ourts in the Ninth Circuit have held that "allegations of nuisance and invasions of privacy in TCPA actions are concrete" injuries that establish standing. See *Mbazomo v. ETourandtravel, Inc.*, 16-CV-2229-SB, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (E.D. Cal. Dec. 8, 2016).  In *Mbazamo*, the court held that a violation of the TCPA represents a concrete injury because "[t]he history of sustaining claims against both unwelcome intrusion into a plaintiff's

seclusion and unceasing debt-collector harassment are squarely 'harm[s] that [have] traditionally been regarded as providing a basis for a lawsuit.'" Mbazomo, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (quoting *Spokeo*, 136 S.Ct. at 1549-50). The court declined to follow Romero, explaining that Romero "improperly erodes the pleading standard set under Fed. R. Civ. P. 8(a) . . . . A plaintiff [need only] plausibly tie the alleged acts of the defendant to the alleged harms suffered." Id. *Messerlian v. Rentokil N. Am., Inc.* (C.D.Cal. Dec. 15, 2016, No. CV 16-6941-GW (GJSx)) 2016 U.S.Dist.LEXIS 175224, at *7-8.

47.     "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*. at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court noted that concreteness is quite distinct from particularization. *Id*. An injury is "particularized" if it affects "the plaintiff in a personal and individual way." *Id*. In addition, for an injury to be "concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id*. However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. *Id*. at 1549. In order to determine whether an intangible harm constitutes injury in fact, *Spokeo* provided two factors to be considered: "history and the judgment of Congress." *Id*. at 1549. Specifically, "(1) whether the statutory violation bears a 'close relationship to a harm that has

traditionally been regarded as providing a basis for a lawsuit in English or American courts,' and (2) congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural." *Matera v. Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016). *Spokeo* also held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549.  In such a case, a plaintiff "need not allege any additional harm beyond the one [the legislature] has identified." *Id.*

48.     The TCPA provides a private right of action for violations of § 227(b) and the associated regulations. 47 U.S.C. § 227(b)(3).  Subsection (b) prohibits calls (other than for an emergency) to a telephone number assigned to a cellphone by way of an automatic telephone dialing system ("ATDS") without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).  In the Ninth Circuit, a plaintiff must show: (1) "the defendant called a cellular telephone number; (2) "using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).  A plaintiff must also be a "called party" within the definition of the TCPA. *Charkchyan v. EZ Capital*, No. 2:14-cv-03564-ODW (ASx), 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315, at *3 (C.D. Cal. June 11, 2015)

49. First, a text message and a prerecorded robotic voice message call are both a "call" for purposes of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952-54 (9th Cir. 2009). Plaintiff supports these allegations with activity logs from September 2018 to November 2018 documenting the calls. This element is satisfied. To wit:

```
11/9/18     7:31 AM    (646) 838-0180 from Marcus Thomkins
11/9/18     7:31 AM    (646) 838-0180
11/9/18     9:17 AM    (646) 838-0180
11/9/18     9:18 AM    (646) 838-0180
11/9/18     9:19 AM    (646) 838-0180
11/9/18     9:20 AM    (646) 838-0180
11/12/18    7:09 AM    (646) 838-0180
```

Calls prior to 8:00 AM violate the FTC TSR calling hours.
https://www.consumer.ftc.gov/articles/0198-telemarketing-sales-rule

50. Second, Plaintiff adequately pleads use of an automatic telephone dialing system ("ATDS"). The TCPA defines ATDS to mean "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The focus of the inquiry is on the equipment's *capacity* to perform this function. *See Satterfield*, 569 F.3d at 951. "Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Id.* Defendant called with a prerecorded message, which, by definition requires an auto-dialer that operates without human intervention.

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA AND CIPA - 22

18CV

51.     "In proving a defendant's use of [an] ATDS under the TCPA, courts have recognized the difficulty a plaintiff faces in knowing the type of calling system the defendant used without the benefit of discovery." *Charkchyan,* 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.   For example, in *Charkchyan,* the plaintiff's allegations supported the use of an ATDS. *Id.*   In that case, the plaintiff described the messages received "as being formatted in SMS short code, '670-76,'" and as being impersonally scripted. *Id.*   This was enough to establish the defendant used an ATDS. *Id.*   Similarly, in *Kramer v. Autobytel,* the plaintiff alleged sufficient facts to support a reasonable inference that the Defendant used an ATDS: "[The plaintiff] described the messages from SMS short code 77893, a code registered to [a defendant]. The messages were advertisements written in an impersonal manner. [And,] [the plaintiff] had no other reason to be in contact with the Defendant." 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010). In contrast, the plaintiff in *Williams v. T-Mobile USA, Inc.* failed to plead more than "legal conclusions couched in fact" when asserting the "barrage of calls and . . . frequency and pattern of the calls provide[d] the necessary factual support." No. 15-cv-3384-JSW, 2015 U.S. Dist. LEXIS 140077, 2015 WL 5962270, at *2-3 (N.D. Cal. Oct. 14, 2015).

52.     Here, Plaintiff alleges that Defendant Alterna Marketing and Pasalagua contacted her using an "automatic telephone dialing system."  This is insufficient

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA AND CIPA - 23

18CV

standing alone, but as in *Charkchyan* and *Kramer*, Plaintiff alleges sufficient additional facts. First, each of the calls are available to the Court as audio recordings of the robotic voice message that initiated the calls. Second, the calls are impersonal advertisements: they do not address Plaintiff personally and they advertise Defendant Alterna Marketing and Pasalagua products. Third, Plaintiff declares that she has never heard of Defendant Alterna Marketing and Pasalagua, visited any location operated by Defendant Alterna Marketing and Pasalagua prior to the harassing and annoying calls, nor provided her cellular telephone numbers to Defendant Alterna Marketing and Pasalagua or consented to receive calls from Defendant Alterna Marketing and Pasalagua.   Plaintiff never went to any web page to sign up with or consent to calls by Defendant Alterna Marketing and Pasalagua.   Plaintiff also has had no prior business relationship with Defendant Alterna Marketing and Pasalagua.   Plaintiff had no reason to be in contact with Defendant Alterna Marketing and Pasalagua nor has she ever purchased any kind of product or service from Defendant Alterna Marketing and Pasalagua or its lead source. Plaintiff's allegations are sufficient to establish that Defendant Alterna Marketing and Pasalagua used an ATDS in sending their prerecorded solicitation messages and in making live telemarketing calls to Plaintiff.

53.     Third, Plaintiff adequately pleads that the conduct was without her prior express consent. "Prior express consent" under the TCPA is "consent that is clearly

and unmistakably stated." *Satterfield*, 569 F.3d at 955; *Charkchyan*, 2015 U.S.

Dist. LEXIS 76560, 2015 WL 3660315 at *3.  Moreover, "[t]he Federal

Communications Commission ('FCC'), tasked with instituting implementing

regulations for the TCPA, added an express *written* consent requirement in the case

of messages that 'include[] or introduce[] an advertisement or constitute[]

telemarketing.'"  *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2015 U.S.

Dist. LEXIS 12060, 2015 WL 431148, at *3 (N.D. Cal. Feb. 2, 2015) (citing 47

C.F.R. § 64.1200(a)(2)).  An "advertisement" includes "any material advertising

the commercial availability or quality of any property, goods, or services." 47

C.F.R. § 64.1200(f)(1).  "Telemarketing" means the initiation of a telephone call or

message for the purpose of encouraging the purchase or rental of, or investment in,

property, goods, or services, which is transmitted to any person." *Id.* §

64.1200(f)(12).

54.     In *Charkchyan*, the plaintiff did not give prior express consent. *Id.* There, the

plaintiff claimed: "(1) he [was] the current subscriber to the cellular telephone at

issue; (2) he [had] never heard of [the defendant]; (3) he [had] never visited any

location operated by [the defendant]; and (4) he [had] never provided his cellular

number to [the defendant], nor consented to receiving calls from [the

defendant]." *Id.*  Where the defendant failed to provide any conflicting evidence,

this was sufficient. *Id.*

18CV

55.    Similarly, in Plaintiff's case, the allegations establish that she did not give prior express consent.  She declared that she was "the regular user and subscriber to the cellular telephone number at issue."  She also declared that she has "never heard of [Defendant], visited any location operated by [Defendant], provided [his] cellular telephone number to [Defendant,] or consented to receive text messages from [Defendant]."  As in *Charkchyan*, these allegations are sufficient to support Plaintiff's claims that she did not give prior express consent authorizing Defendant Alterna Marketing Consultants, LLC to send the prerecorded messages. Furthermore, the calls promote the sender's illegal solar panel business and fall within the FCC's definition of an advertisement and/or telemarketing. Thus, express written consent was required, and there is no evidence of such. This element is consequently satisfied.

56.    Fourth, Plaintiff sufficiently pleads that she was the "called party." To have standing under the TCPA, a plaintiff must be the "called party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3, *4; 47 U.S.C. § 227(b)(1)(A). A telephone service subscriber is the "called party" within the meaning of the TCPA. *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3; *Gutierrez v. Barclays Group*, No. 10cv1012 DMS (BGS), 2011 U.S. Dist. LEXIS 12546, 2011 WL 579238, at *4 (S.D. Cal. Feb. 9, 2011). Here, Plaintiff declares that she was "the regular user and subscriber to the cellular phone

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA AND CIPA - 26

18CV

number" that received the calls and messages.  Plaintiff is therefore the "called party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.

## VI. FACTUAL ALLEGATIONS

### A. ALTERNA MARKETING CONSULTANTS, LLC

57.     One of ALTERNA MARKETING CONSULTANTS, LLC's strategies for marketing its services is placing telemarketing robocalls to those who have not consented to receive such solicitations, including Plaintiff.

58.     ALTERNA MARKETING CONSULTANTS, LLC uses equipment that has the capacity to store or produce random or sequential telephone numbers to be called and that includes autodialers and predictive dialers (each an "automatic telephone dialing system" or "ATDS").  Plaintiff heard a balloon popping sound along with a pause and a click at the beginning of each telemarketing call made to Plaintiff by the lead company and by ALTERNA MARKETING.

59.     A lead company sold leads to ALTERNA MARKETING.  Defendant Alterna Marketing Consultants, LLC knows of and is aware of each of the other Defendant's duties, responsibilities and function within the telemarketing operation.  Defendant Alterna Marketing Consultants, LLC is a co-conspirator with each other Doe Defendants in this matter.  They all know each other, they all talk to eachother.  They have all designed, planned and orchestrated the telemarketing scheme and scam together.

**B. Plaintiff**

60.   Plaintiff Collette Stark is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**C. Telephone number 619-347-0726**

61.   A phone number beginning 619-347-0726 is registered to Ms. Stark.

62.   619-347-0726 is on the National Do Not Call Registry.

63.   Ms. Stark answers calls made to 619-347-0726.

64.   Ms. Stark pays the phone bills for 619-347-0726.

**D. Alterna Marketing Consultants, LLC's Illegal Telemarketing Robocalls to Plaintiff**

65.   On the exact dates and times stated above Defendant Alterna Marketing called to 619-347-0726, which is Ms. Stark's cellular telephone, and caused her cell phone to ring. Ms. Stark picked up. The person on the other end wasn't anyone Ms. Stark knew.  In fact, it wasn't a person at all; it was a prerecorded voice. The voice advertised merchant card solutions.

66.   Plaintiff has never heard of Alterna Marketing and Pasalagua and had not given permission to call her, let alone with a telemarketing robocall. Ms. Stark was surprised and frustrated to be interrupted by a prerecorded solicitation to a phone number that had long been on the National Do No Call Registry.  November 9, 2019, a call to 619-347-0726 caused Ms. Stark's cell phone to ring again, from 66-

18CV

838-0180.  Again it was a prerecorded voice, again advertising merchant cash advances, again from Alterna Marketing and Pasalagua.

67.    It didn't stop there. *ALTERNA MARKETING placed at least 7 more telemarketing robocalls to Ms. Stark.*  The calls on November 9, 2018 came from 646-838-0180 which turns out to be totally spoofed phone numbers.  The agent on the phone said he was with ALTERNA MARKETING CONSULTANTS, LLC.

68.    Pasalagua fraudulently uses Alterna Marketing Consultants, LLC, to evade the TCPA telemarketing laws.  Pasalagua has these many different corporations in order to hide, obfuscate and misleading those that he harms in order to conceal his true identity.

69.    Most of these robocalls used a prerecorded or artificial voice, while the rest were marked by an unnatural click or pause at the beginning—signaling to Ms. Stark that the call was placed by an ATDS rather than manually dialed by a person.

70.    Seven of ALTERNA MARKETING CONSULTANTS, LLC's telemarketing robocalls were made to Ms. Stark while she was in California, in this District.

71.    More than seven of ALTERNA MARKETING CONSULTANTS, LLC's telemarketing robocalls were made to Ms. Stark after ALTERNA MARKETING CONSULTANTS, LLC knew of her desire to never be solicited via telemarketing calls, which is publicly known in this District.

18CV

72.    Ms. Stark repeatedly asked Alterna Marketing and Pasalagua to stop calling.

73.    Due to the massive volume of robocalls made by Defendant Alterna

Marketing and Pasalagua to her, Plaintiffs' investigation into the calls and their

illegal features (e.g., prerecorded voices and placement by an ATDS, as manifested

by beginning with an unnatural click or pause) is ongoing. Based on what is known

to Plaintiff so far, the following table summarizes some of the non-emergency

telemarketing robocalls placed by Alterna Marketing and Pasalagua to Plaintiff:

| | | |
|---|---|---|
| 11/9/18 | 7:31 AM | (646) 838-0180 |
| 11/9/18 | 9:17 AM | (646) 838-0180 |
| 11/9/18 | 9:18 AM | (646) 838-0180 |
| 11/9/18 | 9:19 AM | (646) 838-0180 |
| 11/9/18 | 9:20 AM | (646) 838-0180 |

There were additional calls because the 77/9/2018 calls demonstrated that

the caller already had personal information of Plaintiff including her name, age and

address.  Discovery will force Defendants to provide evidence on the prior calls.

## VII. FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

74.    Plaintiff realleges and incorporates by reference each and every allegation

set forth in the preceding paragraphs.

75.    The foregoing acts and omissions of Alterna Marketing and Pasalagua

and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C.

18CV

§ 227(b)(1)(A), by making non-emergency telemarketing robocalls to the cellular telephone number of Plaintiff without prior express written consent.

76.    Defendant Alterna Marketing and Pasalagua in this matter is vicariously liable for the acts and actions of each of the other Doe Defendants under the *Gomez* case from the US Supreme Court handed down on January 20, 2016.

77.    Plaintiff has no pre-existing business relationship with Defendant Alterna Marketing and Pasalagua.

78.    Defendant Alterna Marketing and Pasalagua are not a non-profit or not-for-profit entity.

79.    Defendant Alterna Marketing and Pasalagua are not a political organization.

80.    Defendant Alterna Marketing and Pasalagua were not taking a poll or vote.

81.    Defendant Alterna Marketing and Pasalagua were not attempting to collect on a student loan.

82.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

83.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

84.    Plaintiff also seeks a permanent injunction prohibiting Alterna Marketing and Pasalagua and its affiliates and agents from making non-emergency

telemarketing robocalls to cellular telephone numbers without prior express written consent of the called party.

## VIII. SECOND CLAIM FOR RELIEF

**(Non-Emergency Robocalls to Residential Telephones, 47 U.S.C. § 227(b)(1)(B))**

85.    Ms. Stark realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

86.    The foregoing acts and omissions of Alterna Marketing and Pasalagua and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), by making non-emergency prerecorded telemarketing calls to the residential telephone 619-347-0726 number of Ms. Stark without prior express written consent.

87.    Plaintiff has no pre-existing business relationship with any of the Defendants.

88.    Defendants are not a non-profit or not-for-profit entity.

89.    Defendants are not a political organization.

90.    Defendants were not taking a poll or vote.

91.    Defendants were not attempting to collect on a student loan.

92.    Ms. Stark is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

93.    Ms. Stark is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

94.    Ms. Stark also seeks a permanent injunction prohibiting Alterna Marketing and Pasalagua and its affiliates and agents from making non-emergency prerecorded telemarketing calls to residential telephone numbers without prior express written consent of the called party.

## IX. THIRD CLAIM FOR RELIEF

**(Telemarketing Solicitations to National Do Not Call Registrants, 47 U.S.C. § 227(c))**

95.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

96.    The foregoing acts and omissions of Alterna Marketing and Pasalagua and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(c), by making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. §64.1200(c)(2).

97.    Plaintiff has no pre-existing business relationship with any of the Defendant.

98.    Defendants are not a non-profit or not-for-profit entity.

99.    Defendants are not a political organization.

100.   Defendants were not taking a poll or vote.

101.   Defendants were not attempting to collect on a student loan.

18CV

102.   Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

103.   Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

104.   Plaintiff also seeks a permanent injunction prohibiting Alterna Marketing and Pasalagua and its affiliates and agents from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants Alterna Marketing and Pasalagua and Doe Defendants, jointly and severally, as follows:

A. Leave to amend this Complaint to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Alterna Marketing and Pasalagua violate the TCPA and CIPA;

C. An order enjoining Alterna Marketing and Pasalagua and its officers, partners, employees, affiliates and agents from engaging in the unlawful conduct set forth herein, including violation of 47 USC §501;

D. An award to Plaintiff of damages, as allowed by law under the TCPA, and not limited to the calls listed in the preliminary table above;

E. For statutory damages in the amount of $5,000 per violation pursuant to California Penal Code §637.2(a)(1) or, if greater, three times actual damages as provided in California Penal Code §637.2(a)(2);

F. $500 plus threefold damages for intentional or willful violation of the Do-Not-Call Registry for each and every call;

G. For punitive damages in an amount to be determined with exactness at trial herein;

H. For a preliminary and permanent injunction to restrain further violations of the CIPA, pursuant to California Penal Code §637.2(b);

I. For the payment of reasonable attorneys' fees and costs of suit incurred herein under all applicable statutes and rules including under Cal. Civ. Proc. Code §1021.5 for attorneys that have been or will be hired;

J. For an injunction prohibiting Defendants Alterna Marketing and Pasalagua from ever contacting Plaintiff ever again in any manner whatsoever, including spam texting, robodialing, and spam emailing;

K. $1,500 for each violation of 16 CFR §610.4(b)(iii)(B) initiating a call to a DNC registered number;

L. $1,500 for each violation of 47 CFR §64.1601(3) caller ID spoofing;

M. $1,500 for each violation of 47 CFR §64.1200(d)(1) failure to provide copy of written do not call policy;

18CV

N. $1,500 for each violation of 47 CFR §64.1200(b)(1) failure to state name of business at beginning of call;

O. $1,500 for each violation of 47 USC §227(b)(1)(A)(iii) willful or knowing call to cellular phone;

P. $1,500 for each violation of 47 USC §227(b)(1) for using an ATDS;

Q. $1,500 for each violation of 47 USC §227(c) and (d) for calling a phone number on the DNC registry; and

R. For any other relief that the Court deems just and proper.

## XI. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

Dated:  November 13, 2018

/S/ *Collette Stark*
Collette Stark, Plaintiff